Argued and submitted August 6, 2008, remanded for recalculation of child support award; otherwise affirmed January 7, 2009

STATE OF OREGON,
*Petitioner,*

*v.*

MATTHEW K. CUNNINGHAM
and Christina Ann Starr,
aka Christina Blankenship-Starr,
*Respondents.*

Matthew K. CUNNINGHAM,
*Petitioner-Appellant,*

*v.*

Christina Ann STARR,
aka Christina Blankenship-Starr,
*Respondent-Respondent.*

Washington County Circuit Court
C060970DR; A135983

200 P3d 581

James B. Ehrlich argued the cause and filed the brief for appellant.

Respondent waived appearance.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Father appeals a supplemental judgment modifying custody, parenting time, and support obligations with respect to the parties' child. He challenges that portion of the judgment requiring him to pay child support in the amount of $334 per month. For the reasons that follow, we remand for the trial court to recalculate the child support award and otherwise affirm.

Father and mother have one child, A, who was born in 1997.[1] Father and mother were never married. In February 2005, father and mother stipulated to a general judgment determining custody, parenting time, and child support of A. Pursuant to that judgment, father was awarded legal and physical custody of A and mother was granted parenting time. The judgment recounted that father was self-employed, had the means and resources available to support A, and "earns on average not less than $2,500[ ] per month, gross." No child support obligation was imposed on mother because she was unemployed and "only able to provide for her own basic necessities."

Two years later, in February 2007, father and mother agreed to transfer custody of A to mother; the agreement provided that father would file the appropriate court documents necessary to effectuate the parties' agreement. Consequently, father filed a motion to modify the custody, parenting time, and child support provisions of the judgment. *See* ORS 107.135 (providing for modification of judgment); ORS 109.103 (applying provisions of ORS 107.135 to unmarried parents). He requested that mother be awarded sole custody of A, that he be given parenting time, and that his child support obligation be "terminate[d]," based on his inability to pay "due to receiving public ass[istance] at this time and my income falls below the guideline for adequate self support."[2] Mother objected only to father's request to terminate child support, claiming that "[father] is capable of paying child support, and earning more than he is claiming."

---

[1] Father also has two "non-joint" children; mother has one.

[2] In the form used for his motion, father checked the box requesting termination of child support; however, at the hearing, father clarified that child support had not been decided and he was "asking it to get set."

A hearing on father's motion to modify was held on May 8, 2007. The sole issue at the hearing was the amount, if any, of child support father would be obligated to pay as a result of the change in custody of A.[3] Both parties appeared *pro se*, and they were the only witnesses who testified.

Father testified that he is self-employed doing repair and "handyman" work and that he earns $11.65 per hour. In response to questions from the court, he explained that he is not a licensed contractor, that he last worked as a regular employee for someone else about 15 years ago, earning approximately $10.00 per hour laying floors, and that he "do[esn't] work well with others." Father also presented evidence of his monthly household expenses, excerpts from his tax returns in 2004, 2005, and 2006, and a statement reflecting that he was receiving food stamp benefits. On his uniform support affidavit, he indicated that his gross monthly income was $1,166.

Mother testified that father "has always made more than" $11.65 an hour. She acknowledged that her testimony was based on "how we lived" and father's current lifestyle. She testified that father and his ex-wife, with whom he was living at the time of the hearing, drive expensive vehicles, "[ ] they have boats, they have horses * * * [f]our-wheelers * * * they go on vacations, you know, Mexico." Father denied mother's assertions, explaining that he drives a 1986 Toyota pickup; has no financial interest in his ex-wife's vehicle; does not own any four-wheelers, boats, or horses; had taken one trip to Mexico, which was paid for by his ex-father-in-law; and lives in a rental house owned by his ex-father-in-law for which he is responsible for one-third of the rent and expenses.

The court entered a supplemental judgment, awarding custody of A to mother and providing parenting time to father. The court also ordered father to pay monthly child support of $334, finding that

---

[3] The court apparently agreed with the parties that there was a substantial change in circumstances sufficient to justify modification of the custody, parenting time, and support provisions of the stipulated judgment. *See* ORS 107.135.

"[f]ather has craftsman skills but chooses to run his own cash business rather than find employment which would pay him a reasonable wage and benefits and which would incidentally subject him to child support garnishments. Father has reduced his living expenses but enjoys a comfortable lifestyle beyond his apparent means by assuming ownership and responsibility for nothing. *His earning potential is $2[,]500 at least per month.* Father has 2 non-[joint] children for whom support is ordered."

(Emphasis added.)

Father appeals, challenging the court's award of child support.[4] In his first three assignments of error, he argues, essentially, that the trial court erred in imputing to him a potential income of $2,500 per month in calculating the child support obligation. He contends that the court erred in applying OAR 137-050-0360(1), which provides for the use of potential income in determining child support, because the evidence in the record does not support a finding that he was working less than full-time. He further argues that, even assuming that OAR 137-050-0360 properly applies, the court erred in calculating his earning potential to be $2,500 per month under the methodology required by OAR 137-050-0360(2).

■     OAR 137-050-0360(1) provides:

"If a parent is unemployed, employed on less than a full-time basis or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income. For purposes of this determination, it is rebuttably presumed that a parent can be gainfully employed on a full-time basis."

Thus, under the above rule, if a parent is not employed or is employed part-time, then child support is calculated on the basis of potential income. Subsection (4) of OAR 137-050-0360 defines "full-time" to mean "forty hours of work in a week except in those industries, trades or professions in which most employers due to custom, practice or agreement utilize a normal work week of more or less than 40 hours in a week." As we explained in *LaFavor and LaFavor*, 151 Or App

---

[4] Mother does not appear on appeal.

257, 264, 949 P2d 313 (1997), the measure of full-time employment is not determined solely by the amount of income earned, but whether the parent "is employing his or her abilities on a full-time basis," a determination that must be made on a case-by-case basis.

■   In this case, father does not argue that he has rebutted the presumption that he can work full time, OAR 137-050-0360(1). Rather, he argues only that there was no evidence in the record from which the court could find that he was employed on less than a full-time basis and, thus, the court erred in applying the potential income doctrine at all.

We disagree. Father testified that he earns $11.65 per hour doing repair and "handyman" work. He presented no evidence that fewer than 40 hours of work is a customary work week in his trade or industry, OAR 137-050-0360(4). His most recent tax return, from 2006, reflected a gross income from business of $13,987.[5] That evidence suggests that father worked considerably fewer than 40 hours per week. Nor was there any evidence in the record to suggest that father was otherwise "employing his abilities on a full-time basis" in a manner not reflected in the amount of his earnings. *See LaFavor*, 151 Or App at 264-65 (father was employed on a full-time basis in starting new business; although father's salary from new business was only one-sixth of that from his former job, he was using his skills, qualifications, and knowledge of the industry, and working seven days a week in the new business, which had a positive cash flow and growth potential). On *de novo* review, ORS 19.415(3), we readily agree with the trial court's implicit finding that father's present income is based on less than full-time employment. The court did not err in applying OAR 137-050-0360 to forecast father's potential income.

■   We next consider father's argument that the court erred in determining the *amount* of father's potential earnings. OAR 137-050-0360(2) provides three possible methods for the determination of potential income:

---

[5] His net profit, after deducting business expenses, was $7,312. In 2005, his gross income (based on wages rather than business income) was $2,934. In 2004, it was $12,441, based on business income.

"(a)   The parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community; or

"(b)   If a parent is receiving unemployment compensation or workers' compensation, that parent's income may be calculated using the actual amount of the unemployment compensation or workers' compensation benefit received; or

"(c)   Notwithstanding any other provision of this section, the amount of income a parent could earn working full-time at the current state minimum wage."

The trial court here apparently relied on the methodology described in paragraph (a).[6] However, the court fails to explain how it used that methodology to arrive at a figure of $2,500 per month. The record is devoid of *any* evidence relating to prevailing job opportunities and earnings levels in the community for the type of work that father is qualified to do. Further, there is no evidence in the record to support the court's findings that father has "craftsman" skills. With regard to father's own recent work history, as father points out, "Even assuming that [he] works 40 hours per week and 4.33 weeks every month at $11.65 per hour, his gross income (before deducting for any reasonable and necessary business expenses whatsoever) would only be $2,050."[7] We therefore agree with father that the evidence in the record fails to support the trial court's determination that his potential income is $2,500 per month.[8] Although our review is *de novo*, prudential and practical considerations dictate that we remand to allow the trial court an opportunity to recalculate the child support award in the first instance. We therefore remand for the court to determine father's potential income in light of the

_____

[6] There is no evidence that father was receiving unemployment or workers' compensation benefits, thus paragraph (b) does not apply; similarly, if the court had calculated father's potential income at the then-current minimum wage as it did for mother, then the amount would have been $1,351 per month.

[7] Our calculations yield a figure of $2,018 per month; nonetheless, the point remains.

[8] It may be that the court relied on the statement in the parties' original stipulated judgment that father "earns on average not less than $2,500[ ] per month, gross"; however, we will not presume as much.

requirements of OAR 137-050-0360(2) and to recalculate father's child support obligation accordingly.

Remanded for recalculation of child support award; otherwise affirmed.